## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PAYAM ZERAAT** | ) |
| 880 N. Pollard Street, Apt. 202 | ) |
| Arlington, VA 22203 | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| **THE DISTRICT OF COLUMBIA GOVERNMENT** | ) |
| Serve: The Honorable Muriel Bowser | ) |
| Mayor, District of Columbia | ) |
| 1350 Pennsylvania Avenue NW | ) |
| Washington, D.C. 20004; | ) |
| | ) |
| Also serve: Office of the Attorney | ) |
| General for the District of Columbia | ) |
| 441 4th Street NW, Suite 600 South | ) |
| Washington, D.C. 20001; | ) |
| | ) Civil Action No,: _____ |
| And | ) |
| | ) **JURY TRIAL DEMANDED** |
| **OFFICE OF CAMPAIGN FINANCE** | ) |
| Serve: The Honorable Muriel Bowser | ) |
| Mayor, District of Columbia | ) |
| 1350 Pennsylvania Avenue NW | ) |
| Washington, D.C. 20004; | ) |
| | ) |
| Also serve: Office of the Attorney | ) |
| General for the District of Columbia | ) |
| 441 4th Street NW, Suite 600 South | ) |
| Washington, D.C. 20001; | ) |
| | ) |
| And | ) |
| | ) |
| **CECILY COLLIER-MONTGOMERY** | ) |
| Director, Office of Campaign Finance, | ) |
| in her official and individual capacities, | ) |
| Serve: The Honorable Muriel Bowser | ) |
| Mayor, District of Columbia | ) |
| 1350 Pennsylvania Avenue NW | ) |
| Washington, D.C. 20004; | ) |
| | ) |
| Also serve: Office of the Attorney | ) |

General for the District of Columbia )
441 4th Street NW, Suite 600 South )
Washington, D.C. 20001; )
 )
And )
 )
**WILLIAM SANFORD** )
General Counsel, Office of Campaign Finance, )
in his official and individual capacities, )
     Serve: The Honorable Muriel Bowser )
     Mayor, District of Columbia )
     1350 Pennsylvania Avenue NW )
     Washington, D.C. 20004; )
 )
     Also serve: Office of the Attorney )
     General for the District of Columbia )
     441 4th Street NW, Suite 600 South )
     Washington, D.C. 20001; )
 )
And )
 )
**RENEE COLEMAN-ROLLINS** )
Manager of the Audit Division, for the )
Office of Campaign Finance, )
in her official and individual capacities, )
     Serve: The Honorable Muriel Bowser )
     Mayor, District of Columbia )
     1350 Pennsylvania Avenue NW )
     Washington, D.C. 20004; )
 )
     Also serve: Office of the Attorney )
     General for the District of Columbia )
     441 4th Street NW, Suite 600 South )
     Washington, D.C. 20001; )
 )
     *Defendants.* )
 )

## COMPLAINT

COMES NOW, Plaintiff Payam Zeraat, by and through his attorneys, Michael A. Yoder, Esquire and ZUKERBERG & HALPERIN, PLLC, and files this Complaint in regard to the above-captioned action on the grounds and in the amount set forth as follows:

## **NATURE OF THE ACTION**

1.     This action seeking declaratory and injunctive relief, monetary damages, and other appropriate relief is brought to redress Defendants' violations of Plaintiff's rights secured to him by the laws of the United States and statutory and common law of the District of Columbia.

2.     Plaintiff brings this action pursuant to Title I of the Americans with Disabilities Act as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Rehabilitation Act of 1973 § 501 *et seq.*, the First Amendment of the U.S. Constitution,  42 U.S.C. § 1983, the District of Columbia Human Rights Act as amended, D.C. Code §§ 2-1401.01 *et seq.* ("DCHRA") and District of Columbia common law intentional infliction of emotional distress.

## **PARTIES**

3.     Payam Zeraat ("Plaintiff") is an adult resident of the Commonwealth of Virginia and United States Citizen and suffers from post-traumatic stress disorder ("PTSD").  At all times relevant to this action, Plaintiff was employed as the Investigator for the District of Columbia Office of Campaign Finance ("OCF").  Plaintiff's primary duties and responsibilities include investigating alleged violations of campaign finance laws, rules, and regulations; inspecting polling stations and campaign headquarters; conducting background investigations; and educating candidates in regard to the applicable rules, regulations and statutes governing campaign finance. Prior to working as OCF Investigator, Plaintiff was employed with the Arlington County Police Department for over thirteen (13) years.  While working as an Arlington County police officer, Plaintiff was recognized and awarded for his heroic rescue efforts exerted on September 11, 2001

at the Pentagon and days thereafter by President George W. Bush and in the presence of all five (5) former living Presidents.

4.     Defendant the District of Columbia Government ("Defendant D.C.") is headquartered at 411 4th Street NW, Washington, D.C. 20001 and is a municipal corporation that employs more than twenty-five (25) and is responsible for the supervision and operation of its subordinate agencies and offices, including the Office of General Counsel, Board of Elections, and Office of Campaign Finance.

5.     Defendant Office of Campaign Finance ("Defendant OCF") is a subordinate office or agent of the D.C. Government, located at 1015 Half Street SE, Suite 775, Washington, D.C. 20003, and regulates the reporting and disclosure of the financial operations and activities of candidates for local office, political committees, political action committees, independent expenditure committees, and the constituent service and statehood fund programs. Established within the District of Columbia Board of Elections, the OCF administers and enforces the campaign finance laws of the District of Columbia.

6.     Defendant Cecily Collier-Montgomery ("Defendant Collier-Montgomery") is the OCF Director and Plaintiff's direct supervisor. As OCF Director, Defendant Collier-Montgomery is Defendant D.C.'s agent.  Defendant Collier-Montgomery holds the highest rank within OCF and is responsible for all final decisions and determinations.  Defendant Collier-Montgomery is being sued in her official and individual capacities.

7.     Defendant William Sanford ("Defendant Sanford") is the General Counsel for the Office of Campaign Finance.  As OCF General Counsel, Defendant Sanford is Defendant D.C.'s agent.  Defendant Sanford is being sued in his official and individual capacities.

8.     Defendant Renee Coleman-Rollins ("Defendant Coleman-Rollins") is the Manager for the Audit Division of the Office of Campaign Finance.  Defendant Coleman-Rollins is being sued in her official and individual capacities.

9.     Defendants D.C., OCF, Collier-Montgomery, Coleman-Rollins and Sanford (collectively "Defendants") at all times relevant to this complaint were required by law to follow the United States Constitution and all locally, municipally, and federally enacted statutes, regulations, and ordinances pertaining to Plaintiff's employment with the District of Columbia.

## JURISDICTION

10.    Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117, both of which provide for original jurisdiction for Plaintiff's claims arising under the laws of the United States.

11.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims brought pursuant to the D.C. Code and District of Columbia common law, in that such claims are so closely related to Plaintiff's federal claims providing the basis for this Court's original jurisdiction as to satisfy the same case or controversy requirement prescribed by Article 3 of the United States Constitution.

12.    In the alternative, this court has diversity jurisdiction over all claims alleged in this action in that Plaintiff is a Virginia resident and upon information and belief, all Defendants named in this action reside in the District of Columbia or the State of Maryland.

13.    On November 27, 2018, Plaintiff placed the D.C. Government on notice regarding his tort claims pursuant to D.C. Tort Claims § 12-309, D.C. Official Code, via certified mail, return receipt requested.  Plaintiff also placed the D.C. Government on notice of his ADA claims as required by law.

## VENUE

14.     Venue is proper pursuant to U.S.C. §1391 in that at least one Defendant is a resident of the District of Columbia, and all events giving rise to this action occurred in the District of Columbia unless otherwise stated.

15.     Venue is also proper pursuant to 42 U.S.C. § 2000e-(5)(f)(3) because the alleged unlawful employment practices were committed within this district, the employment records relevant to the alleged unlawful employment practices are maintained and administered in this district, and the District of Columbia has its principal office in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

16.     On July 12, 2018, Plaintiff filed a complaint with the District of Columbia and initiated the required EEO Interactive Process.

17.     On August 14, 2018, Plaintiff completed the EEO Interactive Process and received his Exit Letter and Notice of Right to File a Formal Complaint.

18.     On August 20, 2018, Plaintiff filed his first formal complaint with the Equal Employment Opportunity Commission ("EEOC").

19.     On September 6, 2018, the EEOC issued Plaintiff a Notice of Right to Sue Letter in regard to Plaintiff's first EEOC Complaint.

20.     Plaintiff received the notice on September 12, 2018. (Ex. 1, Notice of Right to Sue Letter.)

21.     Plaintiff has exhausted all administrative remedies and complied with all conditions precedent in maintaining this action, in that Plaintiff initiated the EEO Interactive Process within forty-five (45) days of the alleged acts of discrimination, filed his formal complaint within fifteen (15) days of receiving his Exit Letter and Notice of Right to File a Formal Complaint, and hereby

initiates this action on December 6, 2018, which is within ninety (90) days of September 12, 2018, when Plaintiff received his Notice of Right to Sue Letter.

**FACTS**

**I.      PTSD Diagnosis & Initial Hire**

22.      In 2007, Plaintiff was diagnosed with PTSD as a result of the trauma endured while rescuing survivors and responding to the terrorist attacks at the Pentagon on September 11, 2001.

23.      In January of 2013, Plaintiff was hired as the Investigator for the Office of Campaign Finance for the District of Columbia.  Plaintiff maintained this position at all times relevant to this action.

24.      Upon being hired by OCF, Plaintiff presented evidence of his PTSD diagnosis to Defendants despite their well-known knowledge of his disability. Throughout Plaintiff's employment, most of Plaintiff's co-workers learned of his disability, in addition to Defendants Collier-Montgomery, Coleman-Rollins, and Sanford.

25.      Plaintiff's disability is a mental impairment that substantially limits numerous major life activities, including caring for himself, performing manual tasks, eating, sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working.  Plaintiff's disability is triggered by loud, unexpected noises, and posterior foot traffic, such as people walking behind him. Plaintiff's disability did not affect his employment or ability to perform the essential functions of his job from 2013 until May of 2018.

26.      From 2013 until May of 2018, Defendants accommodated Plaintiff's disability by providing him with a two-person office work space.  Plaintiff's office had a door and enabled him to sit with his back to the wall, thereby substantially reducing noise and eliminating posterior foot traffic.

**II.     OCF's Relocation and Substantial Change in Work Environment**

27.     On May 14, 2018, OCF relocated to 1015 Half Street SE, Suite 775 Washington,

D.C. 20003 ("Suite 775").  Upon reporting for duty that morning, Plaintiff discovered that he was

no longer provided an accommodation for his PTSD.  Rather, Plaintiff had been assigned a cubicle

work space located at the corner of the two most heavily foot-trodden hallways in Suite 775.  Based

on the configuration of the cubicle, Plaintiff's back was to both hallways and he was unable to see

or anticipate any passersby, which triggered his disability's symptoms.

28.     By approximately 10:00 a.m. on May 14, 2018, the foot traffic and noise generated

from the Suite 775 work environment caused Plaintiff's PTSD to manifest and substantially affect

his ability to work.

29.     Plaintiff's PTSD was further exacerbated around 10:30 a.m. when Defendant

Coleman-Rollins approached Plaintiff to ask why he was seated in "her section" of Suite 775.

Plaintiff responded, stating that he had not chosen his work space assignment and he did not have

the authority to relocate without the approval of his supervisor, Defendant Collier-Montgomery.

30.     Despite Plaintiff's response, Defendant Coleman-Rollins ordered Plaintiff to

relocate himself. Plaintiff did not comply with Defendant Coleman-Rollins direction as she is not

his supervisor and does not have the authority to give such order.

31.     Defendant Coleman-Rollins became angry and shouted at Plaintiff, again directing

him to move.  This verbal altercation was of such tone and volume that other District of Columbia

employees in Suite 775 stood from their cubicles and even opened their office doors to observe

the exchange between Defendant Coleman-Rollins and Plaintiff.

32.      Plaintiff immediately contacted OCF Disability Coordinator Nadine Journiette and

requested a disability accommodation.  Ms. Journiette suggested that Plaintiff ask Defendant

Collier-Montgomery to relocate to cubicle 7076G. Plaintiff acted on Ms. Journiette's suggestion thereafter and went to lunch.

33.     When Plaintiff returned from lunch, he observed Defendant Coleman-Rollins pushing a large copy machine she had removed from the designated copy room.   Defendant Coleman-Rollins continued to push the copier across Suite 775 and ultimately placed the copy machine in cubicle 7076G; the exact cubicle Ms. Journiette recommended as an accommodation for Plaintiff.

34.     Defendant Coleman-Rollins removed the copy machine from the copy room and placed the copier in cubicle 7076G because she did not want Plaintiff in "her section" despite her knowledge of Plaintiff's disability and knowing that Plaintiff sought relocation to cubicle 7076G for the sole purpose of accommodating his disability.

**III.     Disability Discrimination, Failure to Accommodate Retaliation, and Hostile Work Environment**

35.     For the next two (2) days, Plaintiff continued to work in his assigned cubicle awaiting a response from Defendant Collier-Montgomery regarding his accommodation request.

36.     On May 16, 2018, Plaintiff contacted Defendant Collier-Montgomery to follow-up on his accommodation request and report Defendant Coleman-Rollins' May 14th conduct.

37.     Rather than responding to Plaintiff's accommodation request or addressing Defendant Coleman-Rollins' actions, Defendant Collier-Montgomery simply stated "[Plaintiff's] personnel folder was completely devoid of any information pertaining to a medical condition [Plaintiff] may have."  Defendant Collier-Montgomery included Defendant Coleman-Rollins' on this email correspondence, thereby putting Defendant Coleman-Rollins' on notice that Plaintiff had engaged in protected activity.

38.     Defendant Coleman-Rollins responded to the email thread, stating "I NEVER

approached [Plaintiff's] cubical nor did I question him as to why he was sitting there."

39.    Defendant Coleman-Rollins, upset that Plaintiff engaged in the aforesaid protected activity, began to retaliate against Plaintiff.  by repeatedly harassing Plaintiff, repetitively telling Plaintiff he needed to relocate from his assigned cubicle, and making derogatory remarks regarding Plaintiff and his disability.

40.    On May 18, 2018, Plaintiff contacted Defendant Collier-Montgomery a third time as his accommodation request had continually been ignored despite Defendant Collier-Montgomery's knowledge of Plaintiff's disability and accommodation request.  Plaintiff further inquired as to whether any action had been taken against Defendant Collier-Montgomery as her harassment and retaliation grew more severe.  Plaintiff did not raise concerns regarding Defendant Coleman-Rollins' intensified discriminatory, harassing, and retaliatory conduct out of fear that doing so further exacerbate Defendant Coleman-Rollins' conduct as it did the first time Plaintiff addressed her unlawful conduct.

41.    Rather than responding to Plaintiff's request or answering any of Plaintiff's questions and concerns, Defendant Collier-Montgomery responded, informing Plaintiff his "Incident Report has been referred to Kenneth McGhie, the General Counsel of the Board of Elections, for investigation."

42.    By May 22, 2018, Plaintiff contacted Mr. McGhie regarding the investigation.  Mr. McGhie responded by telling Plaintiff to contact OCF Senior Staff Attorney Rudy McGann.  Mr. McGann told Plaintiff to contact Board of Elections ADA Coordinator and EEO Counselor Amanda Joiner.  Plaintiff then contacted Ms. Joiner, who told Plaintiff to contact Board of Elections ADA Coordinator Terrica Jennings.

43.    As of May 22, 2018, Plaintiff's simple request for an accommodation had been

passed like a hot potato between OCF and the Board of Elections four (4) times, Plaintiff's request for an accommodation had been ignored three (3) times, and Plaintiff's concerns regarding Defendant Coleman-Rollins' conduct had been disregarded entirely.

44.     For the next twenty-three (23) days, Plaintiff was forced to work in an unaccommodating environment and subjected to Defendant Coleman-Rollins' continued retaliatory harassment.

45.     Defendant Coleman-Rollins continued to retaliate against Plaintiff because he objected to initial discriminatory conduct on May 14th. Such retaliation was not only direct, but also indirect, in that Defendant Coleman-Rollins prohibited her entire staff of approximately seventeen (17) subordinate employees from using any of the copiers in the designated copy room.

46.     In issuing such instruction to her staff, Defendant Coleman-Rollins discreetly stood behind Plaintiff and unanticipatedly shouted to her staff, instructing that Audit Department personnel was to only use the copier in cubicle 7076 moving forward.

47.     Perhaps most indicative of Defendant Coleman-Rollins' discriminatory intent is not only the obvious fact that compelling seventeen (17) people to use a single copier while there are multiple, vacant copiers available is extremely inconvenient, but that the copier in cubicle 7076G was much further away from the Audit Department personnel than the copy room.

48.     On June 14, 2018, twenty-three (23) days after the investigation began, Mr. McGann came to Suite 775 and ordered that the copy machine be returned to its designated location in the copy room in an attempt to triage the hostile work environment to which Plaintiff had been subjected.

49.     The copier was returned to its designated location; however, such relief was short lived.

50.     As soon as Mr. McGann left Suite 775, Defendant Coleman-Rollins again removed the copier from the copy room and placed the machine in cubicle 7076G.

51.     Perturbed by Defendant Coleman-Rollins' outrageous and egregious conduct, Plaintiff took a break from work and left Suite 775.  Plaintiff went to the 1015 Half Street building's rooftop terrace, which is commonly used by numerous employees during their breaks and contacted his wife about the situation.

52.     While conversing with his wife, Plaintiff was approached by Metropolitan Police Department Officer Gregory Crittendon.  Officer Crittendon advised Plaintiff that he received a call alleging that Plaintiff threatened to commit suicide and advised that he had to escort Plaintiff from the building.

53.     At no point did Plaintiff ever threaten to commit suicide.  Plaintiff informed Officer Crittendon that the report was false and after discussing the matter with Plaintiff, Officer Crittendon realized Plaintiff was not suicidal and left the 1015 Half Street premises.

54.     After finishing his conversation with his wife, Plaintiff returned to his cubicle and attempted to continue working despite the crippling force of his PTSD symptoms and feelings of embarrassment and humiliation stemming from reports that he was allegedly suicidal.

55.     While Plaintiff tried to accomplish whatever work he could despite his disability's overpowering symptoms, Officer Crittendon returned to Suite 775 and informed Plaintiff that he had received a second call that Plaintiff had again, threatened to commit suicide.  Officer Crittendon advised Plaintiff that he had to leave the premises this time as this was the second report filed.  Despite the outrageous, false accusation, Plaintiff complied and left the building on his own volition.

56.     Less than an hour after leaving the building Plaintiff received an email from

Defendant Sanford informing Plaintiff that he was "placed on medical administrative leave, effective immediately."

IV.     **Fitness-for-Duty Evaluation and Continued Disability Discrimination**

57.     Despite Plaintiff's exhaustive efforts to obtain information regarding why he was placed on medical administrative leave, Defendants ignored all inquiries and did not provide Plaintiff with any information, correspondence, or otherwise communicate with Plaintiff for forty-six (46) days.

58.     On July 30, 2018, Defendants sent Plaintiff a July 26, 2018 letter requiring Plaintiff to attend a Fitness-for-Duty Evaluation ("FFD Evaluation") or else Plaintiff was subject to immediate termination.  However, the FFD Evaluation was scheduled for July 30, 2018 at 1:00 p.m.; *three (3) hours before Plaintiff ever received this notice in the mail*.  Defendants also failed to provide Plaintiff's counsel with notice of the FFD Evaluation despite their knowledge Plaintiff was represented by counsel.

59.     Plaintiff contacted Defendants and asked why he nor his attorney received notice of the FFD Evaluation *before* the FFD Evaluation's scheduled time, to which Defendants advised that the notice was "probably delayed because of the rain."  Defendants further advised that Plaintiff's counsel had not received notice because his attorney's letter of representation was invalid because it was not signed by Plaintiff.

60.     Alleging that the letter was delayed by the rain is patently false.  Rather, Defendants purposefully delayed notifying Plaintiff of the FFD Evaluation to set in motion their desired plan to concoct a seemingly valid reason to terminate Plaintiff.

61.     Defendants included an express warning that Plaintiff's failure to appear subjected Plaintiff to termination.  The envelope in which the letter was sent was printed on July 21, 2018;

*eight days* before Plaintiff received the notice in the mail.  The letter was signed *four days* before Plaintiff received the notice. Defendants were well aware Plaintiff was represented by counsel in that Defendants acknowledged receipt of Plaintiff's counsel's letter of representation.  Finally, it did not even rain in the District of Columbia or Arlington, Virginia from July 26, 2018, the date Defendants sent the letter, to July 30, 2018, when Plaintiff received the letter. Defendants could have sent the letter via priority mail or even sent Plaintiff an email to provide adequate notice of the FFD Evaluation but intentionally failed to do so.

62.     On July 31, 2018, Plaintiff sent an email to the District of Columbia Office of Human Rights ("DCHR") raising concerns regarding Defendants' delay in notifying Plaintiff of the FFD Evaluation and to discuss the basis for requiring Plaintiff to submit to such evaluation. DCHR instructed such inquiry to be directed to Defendant Sanford and issued a second notice, scheduling the FFD Evaluation for August 10, 2018.

63.     On August 3, 2018, Plaintiff attempted to Defendant Sanford by phone and email to schedule a time to discuss the FFD Evaluation.  Defendant Sanford ignored all phone calls and emails.

64.     On August 6, 2018, Plaintiff again sent an email to Defendant Sanford, this time including numerous other OCF and DCHR personnel on the correspondence.  Defendant Sanford responded, stating "After carefully checking my email and telephone messages, I found that I have not received any prior messages from you."  Defendant Sanford further informed Plantiff he was to contact DCHR, not OCF, regarding the FFD Evaluation.

65.     Defendant Sanford intentionally ignored Plaintiff's attempts to discuss the FFD Evaluation and only responded upon Plaintiff evidencing efforts to contact him.  Moreover, Defendant Sanford further deflected the attempts to discuss the FFD Evaluation by telling Plaintiff

to contact DCHR; the very agency that explicitly stated any inquiry as to the FFD Evaluation should be directed to Defendant Sanford himself.

66.     On August 7, 2018, Defendant Sanford sent an email stating, "As far as The Office of Campaign [F]inance is concerned, [Plaintiff's] Fitness for Duty Evaluation is not negotiable. The best advice we can offer is that your client should comply with the instructions you both received from DCHR regarding the evaluation."

67.     On August 9, 2018, Plaintiff sent a letter to Defendants objecting to the FFD Evaluation as no legal basis supported the mandate that Plaintiff attend such evaluation.

68.     Nevertheless, Plaintiff fully complied and cooperated with Defendants requirement to attend the FFD Evaluation despite the dubious legal basis, if any, for such mandate.

69.     For the next sixty-two (62) days, Plaintiff again received no response, correspondence, or communication as to whether Plaintiff would ever return to his employment with the District of Columbia.

70.     On November 28, 2018, Defendants terminated Plaintiff, effective immediately.

**COUNT I – Disability Discrimination in Violation of the ADA**
**(Against Defendants)**

71.     Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

72.     Plaintiff is a disabled person within the meaning of 42 U.S.C. § 12102(1).  Plaintiff suffers from PTSD, which is a physical or mental impairment that substantially limits one or more of Plaintiff's major life activities, such as caring for himself, performing manual tasks, eating, sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working. Defendants also regard Plaintiff as having such an impairment as defined by 42 U.S.C. §§ 12102(1)(C), 3(A).

15

73.     Plaintiff is a qualified individual within the meaning of 42 U.S.C. § 12111(8). Plaintiff, with or without a reasonable accommodation, can perform the essential functions of OCF Investigator based factors including but not limited to, his education, experience, performance reviews, and October 2018 return-to-work letter.

74.     Plaintiff, at all times relevant to this action, was an employee within the meaning of 42 U.S.C. § 12111(4).

75.     Defendant D.C., at all times relevant to this action, was Plaintiff's employer within the meaning of 42 U.S.C. § 12111(5).  The District of Columbia engaged in an industry affecting commerce and has more than 25 employees for each working day in each of 20 or more calendar weeks in the current and preceding years.

76.     Defendants OCF, Collier-Montgomery, Coleman-Rollins, and Sanford, at all times relevant to this action, were agents of Plaintiff's employer, Defendant D.C., within the meaning of 42 U.S.C. § 12111(5).

77.     Defendants had actual knowledge or constructive knowledge of Plaintiff's disability at all times relevant to this action, in that Defendant's previously accommodated Plaintiff's disability; discussed Plaintiff's disability; discussed Plaintiff's need for accommodations; examined, reviewed, or possessed medical evidence of Plaintiff's disability; and received Plaintiff's numerous requests for a disability accommodation.

78.     Defendant Coleman-Rollins purposefully, willfully, intentionally, or recklessly subjected Plaintiff to a hostile work environment by engaging in a series of actions, including:

    a.   Harassing and ridiculing Plaintiff because of his disability;

    b.   Threatening Plaintiff;

    c.   Placing the copier behind Plaintiff for the purpose of increasing noise;

    d.  Falsely reporting Plaintiff was suicidal;

    e.  Publicizing that Plaintiff was allegedly suicidal to one or more persons;

    f.  Directing all Audit Department personnel to use the copier in cubicle 7076G for the purpose of increasing noise, foot traffic, and humiliate Plaintiff; and

    g.  Disregarding Mr. McGann's instruction to remove the copier and return the copy machine to the designated copy room with knowledge such instruction was intended to provide an accommodation for Plaintiff;

79.    Defendant Collier-Montgomery purposefully, willfully, intentionally, or recklessly retaliated against Plaintiff by engaging in a series of adverse actions, including:

    a.  Ignoring, denying, or refusing Plaintiff's requests for an accommodation;

    b.  Threatening Plaintiff;

    c.  Falsely reporting Plaintiff was suicidal;

    d.  Publicizing that Plaintiff was allegedly suicidal to one or more persons;

    e.  Condoning, encouraging, or incentivizing her subordinates to discriminate against Plaintiff;

    f.  Placing Plaintiff on medical administrative leave;

    g.  Manufacturing a fraudulent or false pretext in an attempt to terminate Plaintiff;

    h.  Requiring Plaintiff to attend an improper and highly invasive medical procedure;

    i.  Failing to engage in the required EEO Interactive Process;

    j.  Withholding relevant and pertinent information from the doctor whom performed the FFD Evaluation;

    k.  Failing to communicate with Plaintiff for forty-six (46) days after his FFD Evaluation;

    l.  Denying Plaintiff's promotion for which he was recommended prior to raising concerns regarding Defendant Coleman-Rollins' discriminatory conduct and requesting an accommodation;

    m.  Failing to allow Plaintiff to return to work after a medical determination he was fit for duty for forty-six days (46) after receiving notice of the same;

    n.  Failing to take remedial action against Defendant Coleman-Rollins despite being aware of Defendant Coleman-Rollins' harassing, discriminatory conduct and permitted and/or otherwise promoted such unlawful conduct; and

    o.  Terminating Plaintiff's employment.

80.    Defendant Sanford purposefully, willfully, intentionally, or recklessly retaliated against Plaintiff by engaging in a series of adverse actions, including:

    a.  Ignoring, denying, or refusing Plaintiff's requests for an accommodation;

    b.  Threatening Plaintiff;

    c.  Falsely reporting Plaintiff was suicidal;

    d.  Publicizing that Plaintiff was allegedly suicidal to one or more persons;

    e.  Condoning, encouraging, or incentivizing her subordinates to discriminate against Plaintiff;

    f.  Placing Plaintiff on medical administrative leave;

    g.  Manufacturing a fraudulent or false pretext in an attempt to terminate Plaintiff;

    h.  Requiring Plaintiff to attend an improper and highly invasive medical procedure;

    i.  Failing to engage in the required EEO Interactive Process;

    j.  Withholding relevant and pertinent information from the doctor whom performed the FFD Evaluation;

    k.  Failing to communicate with Plaintiff for forty-six (46) days after his FFD Evaluation;

    l.  Denying Plaintiff's promotion for which he was recommended prior to raising concerns regarding Defendant Coleman-Rollins' discriminatory conduct and requesting an accommodation;

    m.  Failing to allow Plaintiff to return to work after a medical determination he was fit for duty for forty-six days (46) after receiving notice of the same;

n. Failing to take remedial action against Defendant Coleman-Rollins despite being aware of Defendant Coleman-Rollins' harassing, discriminatory conduct and permitted and/or otherwise promoted such unlawful conduct; and

o. Terminating Plaintiff's employment.

81.     Defendants Collier-Montgomery, Coleman-Rollins, and Sanford committed the aforesaid acts or omissions with the intent to humiliate, ridicule, and insult Plaintiff.

82.     The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and/or engaged in protected activity by requesting an accommodation for his disability by protesting Defendant Coleman-Rollins' unlawful discriminatory and harassing conduct.

83.     All allegations set forth herein violate the ADA.

84.     As a direct and proximate result of Defendants' actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

**COUNT II – Disparate Treatment in Violation of the D.C. Human Rights Act**
**(Against Defendants)**

85.     Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

86.     Plaintiff is a disabled person, a member of a protected class, and a qualified individual as intended by the D.C. Human Rights Act.

87.     Plaintiff is an employee and Defendants are Plaintiff's employer as intended by the D.C. Human Rights Act.

88.     Defendants had actual or constructive knowledge of Plaintiff's disability at all times relevant to this action.

89.     Plaintiff experienced adverse employment action and a materially adverse change in the terms and conditions of his employment based on the allegations articulated in paragraphs 78-80.

90.     Defendants committed such actions with the intent to humiliate, ridicule, and occurred because Plaintiff requested an accommodation and engaged in protected activity.

91.     All allegations set forth herein violate the D.C. Human Rights Act.

92.     As a direct and proximate result of Defendants' actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

### COUNT III – Disparate Treatment in Violation of Title VII
**(Against Defendants)**

93.     Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

94.     Plaintiff is a disabled person, a member of a protected class, and qualified individual as intended by Title VII.

95.     Plaintiff is an employee and Defendants are Plaintiff's employer as intended by Title VII.

96.     Defendants had actual or constructive knowledge of Plaintiff's disability at all times relevant to this action.

97.     Plaintiff experienced adverse employment action and a materially adverse change in the terms and conditions of his employment based on the allegations articulated in paragraphs 78-80.

98.     Defendants committed such actions with the intent to humiliate, ridicule, and occurred because Plaintiff requested an accommodation and engaged in protected activity.

99.     All allegations set forth herein violate Title VII.

100.    As a direct and proximate result of Defendants' actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

**COUNT IV – Disparate Treatment in Violation of The Rehabilitation Act**
**(Against Defendants)**

101.    Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

102.    Plaintiff is a disabled person, a member of a protected class, and qualified individual as intended by The Rehabilitation Act.

103.    Plaintiff is an employee and Defendants are Plaintiff's employer as intended by The Rehabilitation Act.

104.    Defendants had actual or constructive knowledge of Plaintiff's disability at all times relevant to this action.

105.    Plaintiff experienced adverse employment action and a materially adverse change in the terms and conditions of his employment based on the allegations articulated in paragraphs 78-80.

106.    Defendants committed such actions with the intent to humiliate, ridicule, and occurred because Plaintiff requested an accommodation and engaged in protected activity.

107.    All allegations set forth herein violate The Rehabilitation Act.

108.    As a direct and proximate result of Defendants' actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT V – Failure to Accommodate in Violation of the ADA
### (Against Defendants)

109.    Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

110.    Plaintiff is a disabled person as intended by the ADA.

111.    Plaintiff is qualified to perform the essential functions of his job if provided a reasonable accommodation by his employer.

112.    Plaintiff is an employee and Defendants are Plaintiff's employer as intended by the ADA.

113.    Defendants had notice of Plaintiff's disability through actual or constructive knowledge, in that Defendants previously accommodated Plaintiff's disability; discussed Plaintiff's disability; discussed Plaintiff's need for reasonable accommodation; examined, reviewed, or possessed medical evidence of Plaintiff's disability, and received Plaintiff's numerous requests asking for such accommodation.

114.    Defendants knowingly, intentionally, recklessly, negligently, or by gross negligence, discriminated against Plaintiff because of his disability by failing or refusing to provide Plaintiff a reasonable accommodation.

115.     Providing Plaintiff such accommodation would not cause Defendants to incur undue hardship, either financially or otherwise.

116.     All allegations set forth herein violate the ADA.

117.     As a direct and proximate result of Defendants' actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

**COUNT VI – Failure to Accommodate in Violation of the D.C. Human Rights Act**
**(Against Defendants)**

118.     Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

119.     Plaintiff is a disabled person as intended by the D.C. Human Rights Act.

120.     Plaintiff is qualified to perform the essential functions of his job if provided a reasonable accommodation by his employer.

121.     Plaintiff is an employee and Defendants are Plaintiff's employer as intended by the D.C. Human Rights Act.

122.     Defendants had notice of Plaintiff's disability through actual or constructive knowledge.

123.     Defendants knowingly, intentionally, recklessly, negligently, or by gross negligence, discriminated against Plaintiff because of his disability by failing or refusing to provide Plaintiff a reasonable accommodation.

124.     Providing Plaintiff such accommodation would not cause Defendants to incur undue hardship, either financially or otherwise.

125.     All allegations set forth herein violate the D.C. Human Rights Act.

126.    As a direct and proximate result of Defendants' actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

### COUNT VII – Failure to Accommodate in Violation of Title VII
**(Against Defendants)**

127.    Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

128.    Plaintiff is a disabled person as intended by Title VII.

129.    Plaintiff is qualified to perform the essential functions of his job if provided a reasonable accommodation by his employer.

130.    Plaintiff is an employee and Defendants are Plaintiff's employer as intended by Title VII.

131.    Defendants had notice of Plaintiff's disability through actual or constructive knowledge.

132.    Defendants knowingly, intentionally, recklessly, negligently, or by gross negligence, discriminated against Plaintiff because of his disability by failing or refusing to provide Plaintiff a reasonable accommodation.

133.    Providing Plaintiff such accommodation would not cause Defendants to incur undue hardship, either financially or otherwise.

134.    All allegations set forth herein violate Title VII.

135.    As a direct and proximate result of Defendants' actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional

opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

### COUNT VIII – Failure to Accommodate in Violation of the Rehabilitation Act
### (Against Defendants)

136.    Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

137.    Plaintiff is a disabled person as intended by the Rehabilitation Act.

138.    Plaintiff is qualified to perform the essential functions of his job if provided a reasonable accommodation by his employer.

139.    Plaintiff is an employee and Defendants are Plaintiff's employer as intended by the Rehabilitation Act.

140.    Defendants had notice of Plaintiff's disability through actual or constructive knowledge.

141.    Defendants knowingly, intentionally, recklessly, negligently, or by gross negligence, discriminated against Plaintiff because of his disability by failing or refusing to provide Plaintiff a reasonable accommodation.

142.    Providing Plaintiff such accommodation would not cause Defendants to incur undue hardship, either financially or otherwise.

143.    All allegations set forth herein violate the Rehabilitation Act.

144.    As a direct and proximate result of Defendants' actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

### COUNT IX – Hostile Work Environment in Violation of the ADA

**(Against Defendants)**

145.    Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

146.    Plaintiff is a disabled person as intended by the ADA.

147.    Plaintiff is qualified to perform the essential functions of his job if provided a reasonable accommodation by his employer.

148.    Plaintiff is an employee and Defendants are Plaintiff's employer as intended by the ADA.

149.    Defendants had notice of Plaintiff's disability through actual or constructive knowledge, in that Defendants previously accommodated Plaintiff's disability; discussed Plaintiff's disability; discussed Plaintiff's need for reasonable accommodation; examined, reviewed, or possessed medical evidence of Plaintiff's disability, and received Plaintiff's numerous requests asking for such accommodation.

150.    Defendants, with the intent to intimidate, ridicule, and insult Plaintiff, created a hostile and abusive work environment by committing the acts or omissions articulated in paragraphs 78-80.

151.    The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and engaged in protected activity.

152.    All allegations set forth herein violate the ADA.

153.    As a direct and proximate result of Defendant's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT X – Hostile Work Environment in Violation of the D.C. Human Rights Act
### (Against Defendants)

154.    Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

155.    Plaintiff is a disabled person as intended by the D.C. Human Rights Act.

156.    Plaintiff is qualified to perform the essential functions of his job if provided a reasonable accommodation by his employer.

157.    Plaintiff is an employee and Defendants are Plaintiff's employer as intended by the D.C. Human Rights Act.

158.    Defendants had notice of Plaintiff's disability through actual or constructive knowledge, in that Defendants previously accommodated Plaintiff's disability; discussed Plaintiff's disability; discussed Plaintiff's need for reasonable accommodation; examined, reviewed, or possessed medical evidence of Plaintiff's disability, and received Plaintiff's numerous requests asking for such accommodation.

159.    Defendants, with the intent to intimidate, ridicule, and insult Plaintiff, created a hostile and abusive work environment by committing the acts or omissions articulated in paragraphs 78-80.

160.    The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and engaged in protected activity.

161.    All allegations set forth herein violate the D.C. Human Rights Act.

162.    As a direct and proximate result of Defendant's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT XI – Hostile Work Environment in Violation of Title VII
### (Against Defendants)

163.     Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

164.     Plaintiff is a disabled person as intended by Title VII.

165.     Plaintiff is qualified to perform the essential functions of his job if provided a reasonable accommodation by his employer.

166.     Plaintiff is an employee and Defendants are Plaintiff's employer as intended by Title VII.

167.     Defendants had notice of Plaintiff's disability through actual or constructive knowledge, in that Defendants previously accommodated Plaintiff's disability; discussed Plaintiff's disability; discussed Plaintiff's need for reasonable accommodation; examined, reviewed, or possessed medical evidence of Plaintiff's disability, and received Plaintiff's numerous requests asking for such accommodation.

168.     Defendants, with the intent to intimidate, ridicule, and insult Plaintiff, created a hostile and abusive work environment by committing the acts or omissions articulated in paragraphs 78-80.

169.     The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and engaged in protected activity.

170.     All allegations set forth herein violate the Title VII.

171.     As a direct and proximate result of Defendant's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

### COUNT XII – Hostile Work Environment in Violation of the Rehabilitation Act
### (Against Defendants)

172.    Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

173.    Plaintiff is a disabled person as intended by the Rehabilitation Act.

174.    Plaintiff is qualified to perform the essential functions of his job if provided a reasonable accommodation by his employer.

175.    Plaintiff is an employee and Defendants are Plaintiff's employer as intended by the Rehabilitation Act.

176.    Defendants had notice of Plaintiff's disability through actual or constructive knowledge, in that Defendants previously accommodated Plaintiff's disability; discussed Plaintiff's disability; discussed Plaintiff's need for reasonable accommodation; examined, reviewed, or possessed medical evidence of Plaintiff's disability, and received Plaintiff's numerous requests asking for such accommodation.

177.    Defendants, with the intent to intimidate, ridicule, and insult Plaintiff, created a hostile and abusive work environment by committing the acts or omissions articulated in paragraphs 78-80.

178.    The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and engaged in protected activity.

179.    All allegations set forth herein violate the Rehabilitation Act.

180.    As a direct and proximate result of Defendant's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT XIII – Retaliation in Violation of the ADA
### (Against Defendants)

181.   Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

182.   Plaintiff is a disabled person as intended by the ADA.

183.   Plaintiff is qualified to perform the essential functions of his job if provided a reasonable accommodation by his employer.

184.   Plaintiff is an employee and Defendants are Plaintiff's employer as intended by the ADA.

185.   Defendants had notice of Plaintiff's disability through actual or constructive knowledge, in that Defendants previously accommodated Plaintiff's disability; discussed Plaintiff's disability; discussed Plaintiff's need for reasonable accommodation; examined, reviewed, or possessed medical evidence of Plaintiff's disability, and received Plaintiff's numerous requests asking for such accommodation.

186.   Plaintiff engaged in protected activity by requesting an accommodation for his disability, and by protesting Defendant Coleman-Rollins' unlawful discriminatory and harassing conduct.

187.   Defendant Coleman-Rollins purposefully, willfully, intentionally, or recklessly retaliated against Plaintiff by engaging in a series of adverse actions, including:

   a.   Harassing and ridiculing Plaintiff because of his disability;

   b.   Threatening Plaintiff;

   c.   Placing the copier behind Plaintiff for the purpose of increasing noise;

   d.   Falsely reporting Plaintiff was suicidal;

   e.   Publicizing that Plaintiff was allegedly suicidal to one or more persons;

    f.   Directing all Audit Department personnel to use the copier in cubicle 7076G for the purpose of increasing noise, foot traffic, and humiliate Plaintiff; and

    g.   Disregarding Mr. McGann's instruction to remove the copier and return the copy machine to the designated copy room with knowledge such instruction was intended to provide an accommodation for Plaintiff;

188.    Defendant Collier-Montgomery purposefully, willfully, intentionally, or recklessly retaliated against Plaintiff by engaging in a series of adverse actions, including:

    a.   Ignoring, denying, or refusing Plaintiff's requests for an accommodation;

    b.   Threatening Plaintiff;

    c.   Falsely reporting Plaintiff was suicidal;

    d.   Publicizing that Plaintiff was allegedly suicidal to one or more persons;

    e.   Condoning, encouraging, or incentivizing her subordinates to discriminate against Plaintiff;

    f.   Placing Plaintiff on medical administrative leave;

    g.   Manufacturing a fraudulent or false pretext in an attempt to terminate Plaintiff;

    h.   Requiring Plaintiff to attend an improper and highly invasive medical procedure;

    i.   Failing to engage in the required EEO Interactive Process;

    j.   Withholding relevant and pertinent information from the doctor whom performed the FFD Evaluation;

    k.   Failing to communicate with Plaintiff for forty-six (46) days after his FFD Evaluation;

    l.   Denying Plaintiff's promotion for which he was recommended prior to raising concerns regarding Defendant Coleman-Rollins' discriminatory conduct and requesting an accommodation;

    m.   Failing to allow Plaintiff to return to work after a medical determination he was fit for duty for forty-six days (46) after receiving notice of the same;

n.  Failing to take remedial action against Defendant Coleman-Rollins despite being aware of Defendant Coleman-Rollins' harassing, discriminatory conduct and permitted and/or otherwise promoted such unlawful conduct; and

o.  Terminating Plaintiff's employment.

189.   Defendant Sanford purposefully, willfully, intentionally, or recklessly retaliated against Plaintiff by engaging in a series of adverse actions, including:

a.  Ignoring, denying, or refusing Plaintiff's requests for an accommodation;

b.  Threatening Plaintiff;

c.  Falsely reporting Plaintiff was suicidal;

d.  Publicizing that Plaintiff was allegedly suicidal to one or more persons;

e.  Condoning, encouraging, or incentivizing her subordinates to discriminate against Plaintiff;

f.  Placing Plaintiff on medical administrative leave;

g.  Manufacturing a fraudulent or false pretext in an attempt to terminate Plaintiff;

h.  Requiring Plaintiff to attend an improper and highly invasive medical procedure;

i.  Failing to engage in the required EEO Interactive Process;

j.  Withholding relevant and pertinent information from the doctor whom performed the FFD Evaluation;

k.  Failing to communicate with Plaintiff for forty-six (46) days after his FFD Evaluation;

l.  Denying Plaintiff's promotion for which he was recommended prior to raising concerns regarding Defendant Coleman-Rollins' discriminatory conduct and requesting an accommodation;

m.  Failing to allow Plaintiff to return to work after a medical determination he was fit for duty for forty-six days (46) after receiving notice of the same;

n.  Failing to take remedial action against Defendant Coleman-Rollins despite being aware of Defendant Coleman-Rollins' harassing, discriminatory conduct and permitted and/or otherwise promoted such unlawful conduct; and

o.  Terminating Plaintiff's employment.

190.  Defendants aforesaid acts or omissions were committed with the intent to humiliate, ridicule, and insult Plaintiff.

191.  Defendants' retaliation against Plaintiff as a result of his opposition to the aforesaid disability discrimination and engagement in protected activity violates ADA.

192.  As a direct and proximate result of Defendants' retaliation, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT XIV – Retaliation in Violation of the D.C. Human Rights Act
### (Against Defendants)

193.  Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

194.  Defendants engaged in systemic retaliation against Plaintiff because he protested, opposed, and/or spoke out against Defendants' disability discrimination.

195.  Defendants' aforesaid retaliatory action was intentional, deliberate, willful, and conducted in callous disregard of Plaintiff's rights.

196.  In retaliation for engaging in protected activity, Defendant subjected Plaintiff to adverse employment action as articulated in paragraphs 187-189.

197.  Defendants' retaliation against Plaintiff as a result of his opposition to the aforesaid disability discrimination and engagement in protected activity violates the D.C. Human Rights Act.

198.  As a direct and proximate result of Defendants' retaliation, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional

opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

**COUNT XV – Retaliation in Violation of Title VII**
**(Against Defendants)**

199.    Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

200.    Defendants engaged in systemic retaliation against Plaintiff because he protested, opposed, and/or spoke out against Defendants' disability discrimination.

201.    Defendants' aforesaid retaliatory action was intentional, deliberate, willful, and conducted in callous disregard of Plaintiff's rights.

202.    In retaliation for engaging in protected activity, Defendant subjected Plaintiff to adverse employment action as articulated in paragraphs 187-189.

203.    Defendants' retaliation against Plaintiff as a result of his opposition to the aforesaid disability discrimination and engagement in protected activity violates Title VII.

204.    As a direct and proximate result of Defendants' retaliation, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

**COUNT XVI – Retaliation in Violation of the Rehabilitation Act**
**(Against Defendants)**

205.    Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

206.    Defendants engaged in systemic retaliation against Plaintiff because he protested, opposed, and/or spoke out against Defendants' disability discrimination.

207.    Defendants' aforesaid retaliatory action was intentional, deliberate, willful, and conducted in callous disregard of Plaintiff's rights.

208.    In retaliation for engaging in protected activity, Defendant subjected Plaintiff to adverse employment action as articulated in paragraphs 187-189.

209.    Defendants' retaliation against Plaintiff as a result of his opposition to the aforesaid disability discrimination and engagement in protected activity violates the Rehabilitation Act.

210.    As a direct and proximate result of Defendants' retaliation, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT XVII – Retaliation in Violation of the D.C. Whistleblower Protection Act
### (Against Defendants)

211.    Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

212.    Defendants engaged in systemic retaliation against Plaintiff because he protested, opposed, and/or spoke out against Defendants' disability discrimination.

213.    Defendants' aforesaid retaliatory action was intentional, deliberate, willful, and conducted in callous disregard of Plaintiff's rights.

214.    In retaliation for engaging in protected activity, Defendant subjected Plaintiff to adverse employment action as articulated in paragraphs 187-189.

215.    Defendants' retaliation against Plaintiff as a result of his opposition to the aforesaid disability discrimination and engagement in protected activity violates the D.C. Whistleblower Protection Act.

216.    As a direct and proximate result of Defendants' retaliation, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

### COUNT XVIII – First Amendment Retaliation, 42 U.S.C. § 1983
### (Against Defendants)

217.    Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

218.    Defendants engaged in systemic retaliation against Plaintiff because he protested, opposed, and/or spoke out against Defendants' disability discrimination.

219.    Plaintiff is a member of a protected class, in that he engaged in First Amendment protected free speech activity by:

   a. Opposing actual or perceived disability discrimination in the workplace;

   b. Offered information regarding such discrimination to his supervisor and Human Rights and Resources Director, Defendant Collier-Montgomery;

   c. Spoke out as a citizen regarding such conduct;

   d. Reported to DCHR and EEO Counselors regarding such discrimination and misconduct;

   e. Participating in the EEO Interactive Process; and

   f. Filing a Formal Complaint with the EEOC.

220.    Plaintiff, since the aforementioned First Amendment-protected conduct, has been subjected to adverse and retaliatory action by the Defendants as fully described above, which are incorporated here as if repeated verbatim.

221.    Defendants' discriminatory and unlawful retaliatory conduct were substantially or entirely motivated by Defendants' intent to chill, punish, or dissuade Plaintiff from engaging in such protected activity.

222.    Plaintiff at all times relevant hereto enjoyed under federal law the right to engage in permitted free speech by speaking out as a citizen about such misconduct; maintain his good name; maintain his employment and exercise his right to property including wages, promotional benefits, and increase in pay, and other benefits attended to such employment; and to equal opportunities such as confidentiality and the ability to freely participate in the EEO and EEOC grievance processes.

223.    Defendants acted under color of local, municipal, state, or federal law and deprived Plaintiff of his rights and privileges or immunities secured by the Constitution, laws, or regulations of the United States, including but not limited to, the First Amendment free speech rights, procedural and substantive due process, and the liberty right to reputation as secured by the First, Ninth, and Fourteenth Amendments to the U.S. Constitution.

224.    As a direct and proximate result of Defendants' intentional, reckless, deliberate, or grossly negligent actions and/or omissions committed with deliberate indifference to Plaintiff's clearly established rights, Plaintiff sustained a deprivation of his federally secured rights, privileges, and/or immunities, sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

### COUNT XIX – Intentional Infliction of Emotional Distress
**(Against Defendants)**

225.    Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

226.    Defendants engaged in extreme and outrageous conduct by:

a.  Harassing and ridiculing Plaintiff because of his disability;

b.  Threatening Plaintiff;

c.  Placing the copier behind Plaintiff for the purpose of increasing noise;

d.  Falsely reporting Plaintiff was suicidal;

e.  Publicizing that Plaintiff was allegedly suicidal to one or more persons;

f.  Directing all Audit Department personnel to use the copier in cubicle 7076G for the purpose of increasing noise, foot traffic, and humiliate Plaintiff; and

g.  Disregarding Mr. McGann's instruction to remove the copier and return the copy machine to the designated copy room with knowledge such instruction was intended to provide an accommodation for Plaintiff.

h.  Ignoring, denying, or refusing Plaintiff's requests for an accommodation;

i.  Condoning, encouraging, or incentivizing her subordinates to discriminate against Plaintiff;

j.  Placing Plaintiff on medical administrative leave;

k.  Manufacturing a fraudulent or false pretext in an attempt to terminate Plaintiff;

l.  Requiring Plaintiff to attend an improper and highly invasive medical procedure;

m.  Failing to engage in the required EEO Interactive Process;

n.  Withholding relevant and pertinent information from the doctor whom performed the FFD Evaluation;

o.  Failing to communicate with Plaintiff for forty-six (46) days after his FFD Evaluation;

p.  Denying Plaintiff's promotion for which he was recommended prior to raising concerns regarding Defendant Coleman-Rollins' discriminatory conduct and requesting an accommodation;

q. Failing to allow Plaintiff to return to work after a medical determination he was fit for duty for forty-six days (46) after receiving notice of the same; and

r. Failing to take remedial action against Defendant Coleman-Rollins despite being aware of Defendant Coleman-Rollins' harassing, discriminatory conduct and permitted and/or otherwise promoted such unlawful conduct.

227. As a direct and proximate result of Defendants' aforesaid intentional or reckless conduct, Plaintiff suffered extreme emotional distress resulting in physical manifestations of symptoms including but not limited to, loss of sleep, weight gain, upset stomach and related abdominal pain, and loss of appetite, sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

**COUNT XIX – Negligent Infliction of Emotional Distress**
**(Against Defendants)**

228. Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

229. Defendants owed Plaintiff a duty to refrain from engaging in conduct that would foreseeably cause Plaintiff to suffer extreme emotional distress as Defendants and Plaintiff held an employer-employee relationship.

230. Defendants breached their aforesaid duty by engaging in extreme and outrageous conduct as articulated in paragraph 213 of this complaint.

231. It is objectively and reasonably foreseeable that such conduct would cause Plaintiff to experience extreme emotional distress.

232. As a direct and proximate result of Defendants' negligence, Plaintiff suffered extreme emotional distress resulting in physical manifestations of symptoms including but not

limited to, loss of sleep, weight gain, upset stomach and related abdominal pain, and loss of

appetite, sustained economic injuries in amount in excess of $75,000.00, including the denial of

promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has

incurred medical expenses, attorneys' fees, and costs associated with this action.

## DAMAGES

233.    Based on all foregoing paragraphs, and as a direct and proximate result of

Defendants' conduct, Plaintiff has suffered the following injuries and incurred the following

damages:

a.   Plaintiff was denied a promotion for which Defendants recommended and
     encouraged Plaintiff prior to May 14, 2018, ultimately resulting in the loss of pay
     and benefits;

b.   Plaintiff was forced to hire a private psychologist to obtain medical documentation
     for his well-known and medically documented PTSD, thereby incurring medically-
     related costs and expenses;

c.   Plaintiff suffered mental anguish, extreme emotional distress in the forms of
     depression, stress, anxiety attacks, loss of sleep, low self-esteem, weight gain, lack
     of ability to socialize with others, lack of enjoyment in previously-enjoyed
     recreational activities, upset stomach and related abdominal pain, indigestion, loss
     of appetite, bowel pain and related troubles, anger, frustration, feelings of
     loneliness, dissociation, hopelessness, nightmares and daytime terrors relating to
     flashbacks of September 11th, shortness of breath, hot flashes, loss of concentration,
     and repeated, uncontrollable feelings and thoughts as to why this series of events

has occurred, how Plaintiff was treated at work, and the motivation behind committing the actions giving rise to this Complaint.

## ATTORNEY'S FEES

234.    Plaintiff is entitled to an award of attorney's fees and reimbursement of the costs and expenses incurred in relation to prosecuting this action pursuant to Title VII, 42 U.S.C. § 2000e-5(k) as well as other applicable statutory provisions under which this action is brought.

## PRAYER FOR RELIEF

235.    WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment in Plaintiff's favor, and award Plaintiff such relief as to make Plaintiff whole and remedy the aforesaid violations; and hold Defendants' jointly and severely liable and in doing so, award all legal and equitable relief provided by law, including but not limited to:

    a.   Temporary injunctive relief providing Plaintiff with a reasonable accommodation and otherwise non-hostile work environment;

    b.   Declaratory relief finding Defendants' actions are unconstitutional;

    c.   Temporary injunctive relief providing Plaintiff with a reasonable accommodation and otherwise non-hostile work environment;

    d.   Compensatory damages for the injuries sustained and the medical bills and costs incurred in an amount in excess of $75,000.00;

    e.   Punitive damages, but not against the District of Columbia, in an amount to be determined at trial;

    f.   An award of reasonable attorney's fees and litigation costs; and

    g.   Any such other relief this Honorable Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

This, the 6th day of December, 2018.

Respectfully submitted,

/S/ MICHAEL A. YODER
**Michael A. Yoder, Esq. #1600519**
ZUKERBERG & HALPERIN, PLLC
1790 Lanier Place NW
Washington, D.C. 20009
Tel: (202) 424-0454
Fax: (202) 232-5746
michael@zukerberg.com
*Counsel for Plaintiff*

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Payam Zeraat**<br>**880 North Pollard Street**<br>**Unit 202**<br>**Arlington, VA 22203** | From: **Washington Field Office**<br>**131 M Street, N.E.**<br>**Suite 4NW02F**<br>**Washington, DC 20507** |

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **570-2018-03203** | **Alan W. Anderson,**<br>**Deputy Director** | **(202) 419-0756** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

FDC  [signature]                                        SEP 0 6 2018

Enclosures(s)

**Mindy E. Weinstein,**
**Acting Director**                                      *(Date Mailed)*

cc:
| | |
|---|---|
| **Sharon Kershbaum**<br>**Chief Operating Officer**<br>**D.C. GOVERNMENT**<br>**64 New York Ave, NE**<br>**Room 622**<br>**Washington, DC 20002** | **Michael Yoder, Esq.**<br>**ZUCKERBERG & HALPERIN**<br>**1790 Lanier Place, N.W.**<br>**Washington, DC 20009** |

**Plf.'s EXHIBIT 1**

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

> ➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
> ➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
> ➤ **Only one** major life activity need be substantially limited.
> ➤ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
> ➤ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
> ➤ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
> ➤ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
> ➤ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
> ➤ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
> ➤ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*  For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.